UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GREGORY BENDOLPH, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.                                                        Case No.

DLH HOLDINGS CORPORATION d/b/a DLH            FLSA/VOWA Collective Action
CORPORATION and DLH, and                              Demand for Jury Trial
IRVING BURTON ASSOCIATES, LLC,

Defendants.

## COMPLAINT

Plaintiff Gregory Bendolph, individually and on behalf of all others similarly situated

("Plaintiffs"), respectfully moves for judgment against Defendants DLH Holdings Corporation

("DLH") and Irving Burton Associates, LLC ("IBA") (individually or collectively,

"Defendants") as follows:

### I.   SUMMARY OF ACTION

1.      This is a claim for unpaid overtime compensation in violation of the Fair Labor

Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA") and the Virginia

Overtime Wage Act, VA Code, § 40.1-29.2 ("VOWA") arising out work that Plaintiff, and

others similarly situated, performed as employees of Defendants, jointly or individually.

2.      Plaintiff alleges Defendants violated and continue to violate the FLSA and

VOWA through their practice of not paying overtime compensation to Plaintiff and other

1

similarly situated employees when they work more than 40 hours in a week.

3.     Plaintiff Bendolph worked for Defendants in a position called "Accountant." The position would be more accurately titled Accounts Receivable or Payable Specialist or Assistant, as Plaintiff's primary job duty was routine data entry relating to invoice preparation.

4.     Defendant IBA is owned by Defendant DLH. Prior to DLH's purchase of IBA, on approximately October 1, 2020, IBA properly paid overtime compensation to Plaintiff and other similarly-situated IBA employees when they worked more than 40 hours in a week. Upon purchasing IBA, DLH stopped paying overtime compensation to these employees when they worked more than 40 hours in a week and implemented (with respect to these employees associated with IBA) the allegedly unlawful pay practices at issue in this case. Plaintiff asserts the allegedly unlawful pay practices are common to DLH and the subsidiaries it controls.

5.     The FLSA Collective is made up of all persons who have been employed by either or both Defendants, including subsidiaries of DLH, as an Accountant, Accounts Receivable or Payable Specialist or Assistant, or in a comparable position, within three years prior to this action's filing to the trial of this action (the "FLSA Collective Period"). Excluded from this definition are individuals who worked only for Defendant IBA and did so only prior to Defendant DLH's purchase of IBA on or about October 1, 2020.

6.     Plaintiff, on behalf of himself and all similarly situated employees, seeks unpaid overtime wages, liquidated damages, attorneys' fees and costs, and all relief allowed by law arising out of the Defendants' FLSA violations.

7.     The VOWA Collective is made up of all persons who have been employed by either or both Defendants, including subsidiaries of DLH, in Virginia as an Accountant,

2

Accounts Receivable or Payable Specialist or Assistant, or in a comparable position, at any time

from July 1, 2021 to the trial of this action (the "VOWA Collective Period").

8.    Plaintiff, on behalf of himself and others similarly situated, seeks unpaid overtime

wages, liquidated damages, triple damages, pre and post judgment interest, attorneys' fees and

costs, and all relief allowed by law arising out of the Defendants' VOWA violations.

9.    Plaintiff reserves the right to propose amended class definitions and/or sub-classes

in his motions for collective action and/or class action certification, or to add class claims under

Rule 23 of the Federal Rule of Civil Procedure, to the extent discovery warrants such

amendments or subclasses.

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331, as

well as 29 U.S.C. § 216 in that the Plaintiff may bring this action in any appropriate United

States District Court.

11.    The Court has supplemental jurisdiction over the state law VOWA claims

pursuant to 28 U.S.C. § 1367, as these claims are so related to the FLSA claims they form part of

the same case or controversy. In short, Defendants' pay policies and practices with respect to the

non-payment of overtime allegedly violate the FLSA and VOWA.

12.    Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Civil Rule

3(C) since the acts and omissions giving rise to this lawsuit have taken place in this division in

the Eastern District of Virginia. Plaintiff worked for Defendants in this division.

13.    Each Defendant is subject to personal jurisdiction in the Commonwealth of

Virginia. Each Defendant's contacts with this state and this judicial district are sufficient for the

exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

### III.   PARTIES

14.    Plaintiff Bendolph is a resident of Virginia who was employed by Defendants in Virginia in a position called "Accountant." From approximately May 1997 through November 17, 2021 Plaintiff Bendolph worked for Defendant IBA. On or about October 1, 2020, Defendant DLH purchased IBA and took over management and control of IBA. Plaintiff Bendolph worked for Defendant DLH and/or Defendant IBA from approximately October 1, 2020 through November 17, 2021, during which time IBA and DLH were his joint and/or individual employers. At all times relevant, Plaintiff was an "employee" as defined in the FLSA and VOWA.

15.    Defendant Irving Burton Associates, LLC ("IBA") is a Virginia limited liability company with its principal office address (according to filings with the Virginia State Corporation Commission) at 5109 Leesburg Pike Ste 819, Falls Church, VA, 22041 - 3240, USA. Defendant IBA is an "employer" as defined by the FLSA and VOWA.

16.    Defendant DLH Holdings Corporation ("DLH") is a publicly-traded New Jersey corporation with its principal office address (according to filings with the Georgia Secretary of State and New Jersey Department of the Treasury) at 1776 Peachtree Street NW, Suite 300S, Atlanta, GA, 30309, USA. DLH's website identifies its headquarters as 3565 Piedmont Road, NE, Building 3, Suite 700, Atlanta, GA 30305. Upon information and belief, Defendant DLH sometimes does business as DLH Corporation or DLH. Defendant DLH is an "employer" as defined by the FLSA and VOWA.

4

17.     On or about October 1, 2020, Defendant DLH purchased Defendant IBA, took over control of IBA, and implemented (with respect to employees associated with IBA) the unlawful pay practices alleged herein.

18.     At all times relevant, Defendants were the joint employers and/or individual employers of Plaintiff and other similarly situated workers.

19.     At all times relevant, Defendants exercised control over the terms and conditions of the employment of Plaintiff and other similarly situated workers.

20.     Plaintiff is informed, believes, and thereon alleges that each Defendant's gross annual sales made or business done is $500,000.00 or greater. Each Defendant operates in interstate commerce by, among other things, buying and/or selling goods and/or transacting business in multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states.

## IV.     FACTUAL ALLEGATIONS

### A.     Background – Defendants IBA and DLH

21.     Defendant IBA is a federal services provider specializing in technology, business solutions, and research and engineering. It provides research, systems development, and other technology products to the Defense Health Agency, the US Army, and other agencies within the U.S. Department of Defense.

22.     Defendant DLH provides health technology-enabled business process outsourcing, training and technical assistance, staffing support, and program management solutions to many government agencies.

23.     During the time period relevant to this action, each Defendant has employed

5

multiple Accountants and/or Accounts Payable/Receivable Assistants or Specialists, and other employees with substantially similar job duties, regardless of job title.

24.     During the time period relevant to this action, Defendants jointly or individually had a policy and practice of not paying overtime compensation to Accountants and/or Accounts Payable/Receivable Assistants or Specialists, and other employees with substantially similar job duties, when they worked more than 40 hours in a week.

25.     When these employees ask why they are not being paid overtime, their supervisors tell them (incorrectly) that they are not entitled to overtime compensation, even as the supervisors suffer or permit or require them to work more than 40 hours in week.

**B.     Additional allegations Regarding Employer / Single Enterprise / Joint Employment**

26.     Defendant DLH and its subsidiaries, including Defendant IBA, constitute a single enterprise that employs Plaintiff and others similarly situated. These entities engage in related activities, are subject to common control or unified operations, and are linked by a common business purpose. They are managed and controlled by DLH.

27.     Defendant DLH is/was the employer or an employer of Plaintiff and all similarly situated employees, and Plaintiff and all similarly situated employees are/were employees of DLH.

28.     Alternatively, Defendant IBA and each other subsidiary of DLH is/was an employer of Plaintiff and similarly situated employees associated with that subsidiary, and Plaintiff and similarly situated employees are employees of the DLH subsidiary that they are associated with.

6

29.     Alternatively, Defendant DLH and Defendant IBA (and other applicable DLH subsidiaries) are joint employers of Plaintiff and all similarly situated employees. As to any particular Plaintiff or similarly situated employee, the joint employers are DLH and the applicable DLH subsidiary – either IBA or the other DLH subsidiary that the employee is associated with.

30.     Defendant DLH and Defendant IBA (and other DLH subsidiaries) are joint employers of Plaintiff and similarly situated laborers employees because, among other reasons, DLH and IBA (or other DLH subsidiaries) jointly determine, share, or allocate the power to:

a.     direct, control, or supervise the employees;

b.     hire or fire the employees; and

c.     modify the terms or conditions of the employees' employment.

31.     For example, Plaintiff and similarly situated employees were supervised by and reported to employees in DLH's office in Atlanta, Georgia. Upon information and belief, those supervisory employees were direct employees of DLH. DLH has the power to hire, fire, and modify the terms or conditions of Plaintiff's and similarly situated employee's employment. For example, DLH made the decision to not pay overtime to Plaintiff, even though he had been paid overtime for years by IBA before DLH purchased IBA.

32.     In addition, DLH and IBA (and other DLH subsidiaries) are joint employers of Plaintiff and similarly situated employees because, among other reasons, DLH and IBA (and other DLH subsidiaries) jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, including but not limited to handling payroll; or providing the tools necessary to complete the work. For example, DLH provides the software used for

7

Plaintiff's and similarly situated employee's data entry and other work, and DLH handles payroll from a centralized location, while upon information and belief (according to Plaintiff's W2 form) the employees are paid using the federal EIN number for Defendant IBA or other applicable DLH subsidiary.

33.     Plaintiff's paystubs identify both DLH and IBA as his employer, and identify, as his employer's address, the address for DLH's office in Atlanta, Georgia.

34.     In addition, DLH and the IBA (and other DLH subsidiaries) are joint employers of Plaintiff and similarly situated employees because, among other reasons, DLH and its subsidiaries have long-term relationships with a high degree of permanency.

35.     In addition, either through shared management or a direct or indirect ownership interest, Defendant DLH controls the other joint employers – Defendant IBA and other DLH subsidiaries – because Defendant DLH manages the subsidiaries and owns the subsidiaries.

**C.     Background – Plaintiff Bendolph**

36.     From approximately May 1997 through November 17, 2021 Plaintiff Bendolph worked for Defendant IBA or Defendant DLH, individually, or jointly for Defendants IBA and DLH. At all times relevant to this action, Plaintiff worked in Virginia.

37.     Prior to October 1, 2020, Plaintiff worked only for Defendant IBA.

38.     On or about October 1, 2020, Defendant DLH purchased IBA and took over management and control of IBA.

39.     Plaintiff Bendolph continued working for Defendant IBA and/or Defendant DLH from approximately October 1, 2020 through November 17, 2021, during which time IBA and DLH were his joint and/or individual employers.

8

40.     During the entire 24-year period of Plaintiff's employment with IBA and continuing after DLH purchased IBA, Plaintiff worked in a position called "Accountant." As explained below, a more accurate description of his job duties would be "Accounts Receivable / Payable Specialist" or "Accounts Receivable/Payable Assistant."

41.     Plaintiff's job duties did not change when DLH purchased IBA.

42.     Plaintiff was paid hourly. Most recently Plaintiff's hourly rate was $36.39 per hour.

43.     For the 22+ years prior to DLH purchasing IBA, when Plaintiff worked more than 40 hours in a week, Plaintiff was paid overtime compensation by IBA.

44.     After DLH purchased IBA, Plaintiff's new supervisors in DLH's Atlanta office told him that he was required to continue working more than 40 hours in a week to complete his job duties, but that he would no longer be paid overtime compensation.

45.     After DLH purchased IBA, the timekeeping software and protocol were changed so that Plaintiff and similarly situated employees were not permitted enter more than 8 hours in a day, or more than 40 hours in a week, into their timesheets, even though they routinely worked (and IBA/DLH knew they worked and instructed them to work) more than 40 hours each week.

46.     As an Accountant for IBA, prior to the company being purchased by DLH, Plaintiff and similarly situated employees were supervised by and reported to IBA's comptroller, Linh Ly, in Virginia.

47.     After DLH purchased IBA, Plaintiff and similarly situated employees were supervised by and reported to DLH's Billing Manager, Dana Veatch, and similar supervisory employees, in DLH's Georgia office.

48.     Billing Manager Dana Veatch was Plaintiff's immediate supervisor. Dana Veatch's supervisor was Steve Oroho, the new comptroller, also in Georgia.

49.     As Accountants / Accounts Receivable or Payable Specialists, Plaintiff and similarly situated employees did not prepare the budget, make decisions about the budget, or provide tax-preparation services. As explained below, the primary duty of the Accountant / Accounts Receivable or Payable Specialist position was to perform data entry for invoicing and sending bills to clients and similar clerical tasks.

50.     Defendants have multiple Accountants / Accounts Receivable or Payable Specialists.

51.     Upon information and belief, DLH has numerous Accountants / Accounts Receivable or Payable Specialists that it directly employees or jointly employs with other companies it owns.

52.     The primary job duty of the Accountant / Accounts Receivable or Payable Specialist position is/was to perform data entry for invoicing and sending bills to clients, or recording invoices received, and similar clerical tasks. This entailed filling out an online template for submitting each invoice for payment. Specific tasks entailed:

    a.     Confirming that the hours and rates worked by employees were correct;

    b.     Confirming that the accounts payable items were correct;

    c.     Inputting the backup information for the different travel or other direct costs;

    d.     Maintaining and updating files that kept track of the invoices;

    e.     Retrieving information from the computer system at supervisors' or HR's

request;

f.      Responding to emails into the evening from clients and co-workers regarding the invoices and related issues; and

g.      Similar clerical tasks.

53.      More than 85-90% of the Accountant / Accounts Receivable or Payable Specialist job duties involved entering data into the computer system.

54.      All of Defendants' Accountants / Accounts Receivable or Payable Specialists had the same basic job duties, all primarily involving routine data entry.

55.      As Accountants / Accounts Receivable or Payable Specialists, Plaintiff and similarly situated employees did not have authority to hire or fire employees. They did not supervise employees and did not have authority to discipline employees.

56.      As Accountants / Accounts Receivable or Payable Specialists, Plaintiff and similarly situated employees did not have authority to negotiate prices, negotiate invoices, negotiate contracts, prepare budgets, prepare tax filings, or to make payments on behalf of the company.

57.      As Accountants / Accounts Receivable or Payable Specialists, Plaintiff and similarly situated employees did not have authority to decide the amount of fees to charge clients, or to negotiate fees.

58.      As Accountants / Accounts Receivable or Payable Specialists, Plaintiff and similarly situated employees did not have the authority to make purchases on behalf of Defendants or bind Defendants to contracts.

59.      As Accountants / Accounts Receivable or Payable Specialists, Plaintiff and

11

similarly situated employees did not have the authority to negotiate with vendors.

60.     As Accountants / Accounts Receivable or Payable Specialists, Plaintiff and similarly situated employees did not have the authority to develop marketing strategies.

61.     All decisions of significance were made by other, higher-up, employees, not Accountants / Accounts Receivable or Payable Specialists.

62.     Accountants / Accounts Receivable or Payable Specialists did not have the ability to exercise discretion and independent judgment with respect to matters of significance. Their primary duty was and continues to be doing routine data entry at the instruction of their supervisors.

63.     As an Accountant / Accounts Receivable or Payable Specialist, Plaintiff was paid hourly. Most recently, Plaintiff was paid **$36.39** per hour.

64.     After DLH purchased IBA, Plaintiff's new supervisors told him that he was required to work more than 40 hours in a week or 8 per day to get the job done.

65.     After DLH purchased IBA, Plaintiff's new supervisors told Plaintiff that he was not permitted to record more than 8 hours per day, or 40 hours per week, on his timesheet.

66.     After DLH purchased IBA, the timekeeping software and protocol were changed so that Plaintiff was not allowed to record more than 8 hours per day, or 40 hours per week, on his timesheet.

67.     When Plaintiff complained about not getting paid for working more than 40 hours per week, his supervisors told him (incorrectly) that he was not entitled to overtime pay. Defendants knew or should have known that Plaintiff was entitled to overtime pay.

68.     Plaintiff was an hourly employee. Plaintiff's paystubs state that he was an hourly

employee and displayed his hourly rate.

69.    On the rare occasion when Plaintiff worked fewer than 40 hours in a week, Plaintiff was only paid for the hours he worked or for which he used paid time off.

70.    When Plaintiff and similarly situated employees worked more than 40 hours per week, they were only paid for 40 hours.

71.    Defendants use an online timekeeping system, where the employee logs the hours they work each day and week.

72.    Before DLH purchased IBA, IBA used a Costpoint timekeeping system, where Plaintiff and other IBA employees recorded their hours worked each day. During this period – more than 22 years – there were no issues with Plaintiff being paid overtime. Plaintiff recorded his time and was paid overtime compensation accordingly.

73.    After DLH purchased IBA, the timekeeping system was changed, to a system called NAV, and Plaintiff's new DLH supervisors took steps to prevent Plaintiff and similarly situated employees from being paid for the overtime they worked.

74.    The new DLH supervisors told Plaintiff and similarly situated employees that they were to not to record on their timesheets more than 8 hours in a day or 40 in a week. If they worked less than 8 hours in a day, which was rare for Plaintiff, they were to record the accurate lower amount.

75.    The new DLH supervisors further told Plaintiff and similarly situated employees that they were not permitted to enter more than 8 hours in a day or 40 in a week, and that if they tried to record more than 8 hours in a day, or 40 in a week, the system would not accept it.

76.    So Plaintiff followed the supervisors' instructions and did not record more than 8

hours in a day or 40 in a week in NAV, even as the supervisors required Plaintiff and similarly situated employees to work more – sometimes much more – than 8 hours per day and 40 per week.

77.     Plaintiff's new DLH supervisors continued to require Plaintiff and similarly situated employees to work more than 40 hours each week. Plaintiff and similarly situated employees were required to work as many hours per week as it took to get the job done.

78.     On the rare occasions when Plaintiff worked less than 40 hours in a week, Plaintiff recorded his time accurately, and was only paid for the hours he worked and any paid time off that he took.

79.     Plaintiff regularly worked more than 40 hours per week. Defendants knew Plaintiff was working more than 40 hours per week because of the amount of work he was assigned, due to his supervisors instructing him to work long hours (up to 16 hours per day); because he communicated with his supervisors about working the long hours; his supervisors communicated with him on work issues outside of regular hours; and the time stamps on his data entry and emails confirming that Plaintiff worked these hours, among other reasons.

80.     The software Plaintiff and similarly situated employees used for most of the data entry was called NAV. They also used some Microsoft Excel. Plaintiff also used IBA's Costpoint Accounting System and ADP Payroll System to access information needed for the data entry or that his supervisors requested.

81.     Even though Plaintiff regularly worked more than 40 hours per week, after DLH purchased IBA in approximately October 2020, Defendants did not pay Plaintiff overtime compensation for the time he worked in excess of 40 hours per week.

14

82.     Plaintiff's pay stubs indicate he was paid for no more than 40 hours each week, even though he worked more than 40 hours in the week.

83.     During the time period approximately **October 1, 2020 – April 1, 2021** Plaintiff worked approximately **48 hours per week**. On Monday through Friday, Plaintiff would start work at about 7:30am, take a half hour to one hour lunch, work to 5:30pm, and then continue working an additional **0-1 hours in the evening**. About **every other weekend** Plaintiff worked 1-2 hours Saturdays and/or 4-5 hours on Sundays, for a total of approximately **9-9.5 hours per weekday, plus an average of 2 hours on weekends, or about 48 hours per week**.

84.     During the time period approximately **April 1, 2021 – August 1, 2021,** Plaintiff worked approximately **57.5 hours per week**. On Monday through Friday, Plaintiff would start work at about 7:30am, take a half hour lunch, work to 5:30pm, and then continue working an additional **1-2 hours in the evening**.  **Most weekends**, Plaintiff worked 1-2 hours Saturdays and/or 4-5 hours on Sundays, for a total of approximately **10.5 hours per weekday, plus 5 hours on weekends, or 57.5 hours per week**.

85.     During the time period approximately **August 1, 2021 to November 17, 2021,** Plaintiff worked approximately **62.5 hours per week**. On Monday through Friday, Plaintiff would start work at about 7:30am, take a half hour lunch, work to 5:30pm, and then continue working an additional **2 or more hours in evening**.  **Most weekends**, Plaintiff worked 1-2 hours Saturdays and/or 4-5 hours on Sundays, for a total of approximately **11.5 hours per weekday, plus 5 hours on weekends, or 62.5 hours per week**.

86.     Defendants knew Plaintiff worked these hours because of, inter alia, the amount of work that was assigned to Plaintiff and similarly situated employees, the time stamps on his

15

data entry, computer login/logout, and emails will confirm that he worked these hours, among other reasons. Plaintiff discussed the long hours with his supervisors, and his supervisors communicated with him while he was working the overtime hours.

87.     During the above period, after DLH purchased IBA, Plaintiff took off an estimated total of three weeks for vacation and sick days.

88.     The precise start times and end times that Plaintiff Bendolph worked may have varied sometimes, but the overall hours as estimated above are correct to the best of Plaintiff's personal knowledge.

89.     Defendants did not pay Plaintiff anything for any of the hours he worked in excess of 40 hours per week during the period after DLH purchased IBA. Based on Plaintiff's experience, Plaintiff asserts DLH had a policy and practice of not paying overtime compensation to any of its Accountants / Accounts Receivable or Payable Specialists. After DLH took over, Defendants did not pay Plaintiff anything for the time he worked in excess of 40 hours per week.

**C.      Defendants' Knowledge of Overtime**

90.     Plaintiff's supervisors told Plaintiff and similarly situated employees that they were required to work as many hours as it took to get their jobs done.

91.     Plaintiff's supervisors told Plaintiff (incorrectly) that he was not entitled to overtime compensation. Defendants knew or should have known that Plaintiff and similarly situated employees were in fact entitled to overtime compensation.

92.     Defendants knew or should have known Plaintiff and similarly situated employees worked more than 40 hours some weeks because, inter alia, of the amount of work that was assigned to Plaintiff and similarly situated employees, the time stamps on their data entry,

computer login/logout, and emails confirming that they worked these hours, and their supervisors communicated with them about the long hours and communicated with them while they were working the overtime hours, and other means.

93.     Defendants had a policy and practice of not paying overtime compensation to Plaintiff and similarly situated employees, including Accountants and Accounts Receivable or Payable Specialists, even though they worked in excess of 40 hours some weeks.

94.     Defendants regularly scheduled or required Plaintiff and similarly situated employees to work in excess of 40 hours per week.

95.     Plaintiff and similarly situated employees regularly worked in excess of 40 hours per week.

96.     If Defendants had maintained accurate employee time records, the records would show Plaintiff and similarly situated employees working in excess of 40 hours per week.

97.     Plaintiff and similarly situated employees were entitled to overtime compensation equal to one and a half times their regular rate of pay for all time worked in excess of 40 hours per week.

**E.     Defendants' Policy and Practice of Not Paying Overtime Compensation to Accountants and Accounts Receivable/Payable Specialists**

98.     Even though Plaintiff and similarly situated employees worked more than 40 hours in a week, Defendants did not pay them overtime compensation. Defendants did not pay their Accountants and Accounts Receivable or Payable Specialists or other similarly situated employees any compensation for hours worked in excess of 40 per week.

99.     Defendants had a policy and/or practice of not paying overtime compensation to

17

Plaintiff and other similarly situated employees, including Accountants and Accounts Receivable or Payable Specialists, for time worked in excess of 40 hours per week.

100.    Defendants' pay records show their practice of not paying overtime compensation to Plaintiff and similarly situated employees.

101.    Defendants suffered and/or permitted Plaintiff and similarly situated employees to work more than 40 hours per week without overtime compensation.

102.    Defendants knew or should have known that their policy and/or practice of not paying Accountants and Accounts Receivable or Payable Specialists overtime compensation for time worked in excess of 40 hours per week violated the overtime provisions of the Fair Labor Standards Act and the Virginia Overtime Wage Act, and other applicable laws.

**F.    Additional Allegations**

103.    Plaintiff and similarly situated employees were not employed in any bona fide executive, administrative, or professional capacity.

104.    Based on the nature of Plaintiff's and similarly situated employees' job duties, there is no FLSA or VOWA exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

105.    Defendants willfully violated the FLSA and VOWA by not paying Plaintiff and similarly situated employees overtime compensation.

106.    At all relevant times Defendants intended to deprive Plaintiff and similarly situated employees of the overtime pay to which they were entitled to under the FLSA and VOWA, or acted with reckless disregard for their rights under the FLSA and VOWA.

107.    At all relevant times Defendants knowingly failed to pay Plaintiff and similarly

situated employees the overtime pay to which they were entitled to under the FLSA and VOWA.

## V.     FLSA COLLECTIVE ACTION ALLEGATIONS

108.     Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiff on behalf of himself and all other similarly situated employees. The similarly situated employees are as follows:

a.     **FLSA Collective**: All past and present employees of either or both Defendants who have been employed by either or both Defendants, including subsidiaries of DLH, as an Accountant or Accounts Receivable or Payable Specialist or Assistant, or in positions having substantially similar job duties, within three years prior to this action's filing to the trial of this action (the "FLSA Collective Period"). Excluded from this definition are individuals who worked only for Defendant IBA and did so only prior to Defendant DLH's purchase of IBA on or about October 1, 2020.

109.     Defendants employ, and have employed, multiple persons who fit the above definition and were paid under a similar pay scheme which deprived employees of overtime pay for time they worked in excess of 40 hours each week.

110.     These employees perform, and have performed, work which entitles them to payment of overtime compensation which they have not received.

111.     Within the past three years, Plaintiff and similarly situated employees were subject to a common plan or policy of Defendants to avoid paying overtime wages by not paying overtime wages to these employees who were entitled to overtime wages.

112.     Defendants' pay records, Defendants' practice of not accurately tracking employee time, Defendants' practice of not permitting employees to record more than 8 hours

per day or 40 per week on their timesheets, and time stamps from employees' data entry, software login and logout, and emails, among other evidence, show Defendants' policy and practice of not paying overtime compensation to employees who fit the above definition.

113.    Defendants compensated, and continue to compensate, those similarly situated to Plaintiff on a uniform compensation basis common to Plaintiff and other persons performing similar job functions.

114.    Defendants' pay operations are centrally managed as a single enterprise, and Defendants' employees meeting the above definition are subject to common payroll practices.

115.    Defendants' policy of not paying overtime compensation amounted to a willful or reckless disregard of the employees' rights under the FLSA.

116.    Defendants had no good faith basis to believe that not paying overtime compensation to these employees was somehow allowable under the FLSA.

117.    Plaintiff asserts that Defendants' willful disregard of the overtime wage laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period.

118.    Plaintiff's job duties, and the job duties or those similarly situated to Plaintiff, are not exempt from the coverage of the FLSA.

119.    At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

120.    Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former employees of Defendants who have been denied

overtime pay in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

**A.      Notice of Filing of Consent to Become a Party Plaintiff**

121.    Plaintiff hereby files his Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216. Plaintiff's Written Consent Form is attached as Exhibits 1.

**VI.      VOWA COLLECTIVE ACTION ALLEGATIONS**

122.    Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiff on behalf of himself and all other similarly situated employees. The similarly situated employees are as follows:

        a.      **VOWA Collective**: All past and present employees of either or both Defendants who have been employed by either or both Defendants, including subsidiaries of DLH, in Virginia as an Accountant, Accounts Receivable or Payable Specialist or Assistant, or in positions having substantially similar job duties, at any time from July 1, 2021 to the trial of this action (the "VOWA Collective Period").

123.    Defendants employ, and have employed, multiple persons who fit the above definition and were paid under a similar pay scheme which deprived employees of overtime pay for time they worked in excess of 40 hours each week.

124.    These employees perform, and have performed, work which entitles them to payment of overtime compensation which they have not received.

125.    Within the VOWA Collective Period, Plaintiff and similarly situated employees were subject to a common plan or policy of Defendants to avoid paying overtime wages by not

21

paying overtime wages to these employees who were entitled to overtime wages.

126.    Defendants' pay records, Defendants' practice of not tracking employee time, and time stamps from employees' data entry, Defendants' practice of not permitting employees to record more than 8 hours per day or 40 per week on their timesheets, and time stamps from employees' data entry, software login and logout, and emails, among other evidence, show Defendants' policy and practice of not paying overtime compensation to employees who fit the above definition.

127.    Defendants compensated, and continue to compensate, those similarly situated to Plaintiff on a uniform compensation basis common to Plaintiff and other persons performing similar job functions.

128.    Upon information and belief, Defendants' pay operations are centrally managed as a single enterprise, and Defendants' employees meeting the above definition are subject to common payroll practices.

129.    Defendants' policy of not paying overtime compensation amounted to a willful or reckless disregard of their employees' rights under the VOWA.

130.    Defendants had no good faith basis to believe that not paying overtime compensation was somehow allowable under the VOWA.

131.    Plaintiff asserts that Defendants' pay policies and practices and conduct described herein constitute Defendants "knowingly failed to pay wages to an employee in accordance with … § 40.1-29.2 [the VOWA]" within the meaning of VA Code § 40.1-29(J) and (K).

132.    Plaintiff's job duties, and the job duties or those similarly situated to Plaintiff, are not exempt from the coverage of the VOWA.

133.    At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the VOWA.

134.    Defendants are liable under the VOWA for failing to properly compensate Plaintiff and the VOWA Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay in violation of the VOWA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

**A.    Notice of Filing of Consent to Become a Party Plaintiff**

135.    Plaintiff hereby files his Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiff's Written Consent Form is attached as Exhibit 1.

**VI.    CLAIMS**

**COUNT I: VIOLATIONS OF FAIR LABOR STANDARDS ACT**
**(Overtime Violations)**
**(On Behalf of Plaintiff and FLSA Collective)**

136.    Plaintiff alleges and incorporate by reference the preceding paragraphs as if fully set forth herein.

137.    At all times relevant herein, each Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

138.    The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for

23

work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, Plaintiff and all similarly situated employees are entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of forty hours per week.

139.    By failing to compensate Plaintiff and similarly situated employees with overtime compensation for their overtime hours worked, Defendants have violated, and continue to violate the FLSA.

140.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

141.    Plaintiff hereby files his Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiff's Written Consent Forms is attached as Exhibit 1.

142.    Plaintiff seeks damages for himself and all others similarly situated in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

### COUNT II: VIOLATIONS OF VIRGINIA OVERTIME WAGE ACT
### (Overtime Violations)
### (On Behalf of Plaintiff and VOWA Collective)

143.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

144.    Plaintiff currently does not know whether there are a sufficient number of potential Plaintiffs who physically worked for Defendants in Virginia to satisfy the numerosity requirement for a class or subclass under Fed. R. Civ. P. 23(a)(1). A collective action for the

VOWA claims is appropriate pursuant to VA Code §§ 40.1-29.2 and 40.1-29(J). Should discovery reveal as sufficient number of similarly-situated Virginia workers to satisfy the Rule 23 numerosity requirement, Plaintiff reserves the right to amend to assert the VOWA claims as Rule 23 class action claims.

145.   The Virginia Wage Payment Act ("VWPA") provides for collective actions for violations of the VOWA: "[I]f an employer fails to pay wages to an employee in accordance with this section or § 40.1-29.2 [VOWA], the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b)[.]" VA Code § 40.1-29 (J).

146.   Plaintiff brings this VOWA count as a statutorily-authorized collective action pursuant to VA Code § 40.1-29(J), on behalf of himself and the VOWA Collective as defined above.

147.   For time period of July 1, 2021 through present, each Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee, has been, or continues to be, an "employee" within the meaning of the Virginia Overtime Wage Act, VA Code § 40.1-29.2(A).

148.   The VOWA requires, "For any hours worked by an employee in excess of 40 hours in any one workweek, an employer shall pay such employee an overtime premium at a rate not less than one and one-half times the employee's regular rate, pursuant to 29 U.S.C. § 207." VA Code § 40.1-29.2(B). As such, Plaintiff and all similarly situated employees are entitled to overtime compensation at one and one-half times their regular rates of pay for work performed in

excess of forty hours per week.

149.  By failing to compensate Plaintiff and similarly situated employees with overtime wages for their hours worked in excess of 40 hours per week, Defendants have violated, and continue to violate the VOWA.

150.  The VOWA provides, "Any employer that violates the overtime wage requirements of this section shall be liable to the employee for all remedies, damages, or other relief available in an action brought under subsection J of § 40.1-29 [The Virginia Wage Payment Act, VA Code § 40.1-29, ("VWPA")]." VA Code § 40.1-29.2(F).

151.  Defendants' pay policies and practices and conduct described herein constitute Defendants "knowingly failed to pay wages to an employee in accordance with … § 40.1-29.2 [the VOWA]" within the meaning of VA Code § 40.1-29(J) and (K).

152.  Plaintiff hereby files his Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiff's Written Consent Form is attached as Exhibit 1.

153.  Plaintiff seeks damages on behalf of himself and the VOWA Collective in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, as well as "an amount equal to triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §§ 40.1-29.2(F) and 40.1-29(J), all other relief available under the VOWA and VWPA, and all other such legal and equitable relief as the Court deems just and proper.

## FLSA RELIEF REQUESTED

Wherefore, Plaintiff on behalf of himself and the FLSA Collective requests the following

26

relief against Defendants individually, collectively, jointly, and severally:

  A.  An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

  B.  Judgment that Plaintiff and all similarly situated employees were non-exempt employees entitled to protection under the FLSA;

  C.  Judgment against Defendants for violations of the overtime and/or minimum wage provisions of the FLSA;

  D.  Judgment that Defendants' violations as described above were willful;

  E.  Money damages for all unpaid overtime and/or minimum wage compensation owed to Plaintiff and similarly situated employees;

  F.  Liquidated damages in an amount equal to all unpaid overtime and/or minimum wages owed to Plaintiff and similarly situated employees;

  G.  Pre-judgment and post-judgment interest;

  H.  Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

  I.  Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the FLSA or other applicable law;

  J.  Equitable and injunctive relief as allowed by law; and

  K.  Any and all further relief permissible by law.

## **VOWA Relief Requested**

Wherefore, Plaintiff on behalf of himself and the VOWA Collective requests the following relief against Defendants, individually, collectively, jointly, and severally:

A.      An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

B.      Judgment that Plaintiff and similarly situated employees were non-exempt employees entitled to protection under the VOWA;

C.      Judgment against Defendant for violations of the overtime provisions of the VOWA;

D.      Judgment that Defendant's violations as described above were willful;

E.      Judgement that Defendant's violations as described herein constitute Defendant "knowingly failed to pay wages to an employee in accordance with [the VWPA or VOWA]" within the meaning of VA Code § 40.1-29(J) and (K);

F.      Money damages for all unpaid wages, unpaid minimum wages, and overtime compensation owed to Plaintiff and similarly situated employees;

G.      Liquidated damages in an amount equal to all unpaid wages, minimum wages, and overtime owed to Plaintiff and similarly situated employees;

H.      Pre-judgment and post-judgment interest;

I.      Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

J.      An amount equal to "triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §§ 40.1-29.2(F) and 40.1-29(J);

K.      Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the VOWA, VWPA, or other applicable law; and

L.      Any and all further relief permissible by law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.

Respectfully submitted,

GREGORY BENDOLPH,
individually and on behalf of all others similarly situated,
By Counsel

Dated: April 7, 2022

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiffs

**CERTIFICATE**

I HEREBY CERTIFY that unless service is waived a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendants or their authorized agents at the following addresses, or any other addresses where Defendants may be found:

IRVING BURTON ASSOCIATES, LLC
SERVE:   CT Corporation System, Registered Agent
4701 Cox Rd, Ste 285
Glen Allen, VA, 23060 - 6808, USA

DLH Holdings Corporation
SERVE:   CT Corporation System, Registered Agent
289 S Culver St
Lawrenceville, GA, 30046-4805, USA

/s/Timothy Coffield
Counsel for Plaintiffs